NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal Action No. 03-789 (FLW) |
| v. | : | |
| | : | |
| ANGELO C. RODRIGUEZ | : | **MEMORANDUM OPINION** |
| | : | |

**I.   BACKGROUND**

On April 4, 2005, a jury found Angelo C. Rodriguez ("Defendant") guilty of Counts 1 - 6 of an Indictment charging him with knowingly structuring transactions to avoid a domestic financial institution's obligation to file currency transaction reports, in violation of 31 U.S.C. § 5324(a)(3). Jury Verdict ¶¶ 1-6.  In addition, the jury found Defendant's acts of structuring as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of 31 U.S.C. § 5324(d)(2) and 18 U.S.C. § 2. Id. ¶ 7.  Pursuant to 31 U.S.C. § 5317(c), the Government now seeks forfeiture of all of Defendant's property involved in or traceable to offenses involving 31 U.S.C. § 5324.  On April 5, 2005, the jury returned to consider the forfeiture issue; however, Defendant, after consultation with his attorney, waived his right to have a jury decide the forfeiture allegation of the Indictment.  See Def. Waiver of Jury Trial, dated Apr. 5, 2005.  Therefore, this Court, as the finder of fact, must determine the amount subject to forfeiture to the United States.

In addition to charging Defendant with structuring on six separate days, each day constituting a separate count of the Indictment, see Indict. ¶ 5, the Indictment also alleges that Defendant's acts of structuring were "part of a pattern of illegal activity involving more than

$100,000.00, namely $1,300,000.00, in a 12-month period." Indict. ¶ 6. Finally, the Indictment contains a forfeiture allegation, which identifies $1,300,000 as the amount forfeitable to the United States. See Indict. Forfeiture Allegation, at pp. 5-6.[1] The Government contends that the funds structured as property involved in the structuring offense total $1,300,000 and that such amount is subject to forfeiture pursuant to 31 U.S.C. § 5317. The Government claims that the Court "may look beyond the six substantive counts of conviction in reaching a verdict concerning the amount of money involved in the offenses of structuring and, therefore, forfeitable to the United States." Govt. Forfeiture Br. at 1. According to the Government, in a conspiracy or other offense that includes conduct committed over a period of time, "criminal forfeiture ... becomes more expansive because of the all inclusive nature of the count of conviction," id. at 2, and thus may include all property related to the criminal activities committed during such time period. The Government thus argues that since the jury found Defendant guilty of a pattern of illegal activity, the Court can "consider any banking activity that was presented through the evidence over [the] 12-month period and decide factually whether [the Government has] established ... that [such activity] was part of the structuring activity." Unoff. Forfeiture Tr. at 27.

Defendant, on the other hand, argues that the $1,300,000 amount is "arbitrary and capricious and not based on the evidence presented at trial." Def. Letter dated Apr. 20, 2005. According to Defendant, the Government did not establish that the deposits totaling $1,300,000 were involved in the substantive structuring offense. See Unoff. Forfeiture Tr. at 16-20. Defendant thus claims that the amount subject to forfeiture should be restricted to the amounts the jury found, beyond a reasonable doubt, connected to the substantive structuring counts of the Indictment - namely, $372,000. See Def. Letter dated Apr. 20, 2005; Unoff. Forfeiture Tr. at 24.

---

[1] This allegation was redacted before the Indictment was given to the jury for its deliberation.

**II.    DISCUSSION**

Pursuant to Fed.R.Crim.P. 32.2(a), in a criminal forfeiture proceeding, "the indictment or information [must] contain[] notice to the defendant that the government will seek the forfeiture of property as part of any sentence ...." Fed.R.Crim.P. 32.2(a). In addition, Fed.R.Crim.P. 7(c)(2) requires that notice of the extent of any interest subject to criminal forfeiture appear in the form of a forfeiture allegation in the criminal indictment or in the information. See Fed.R.Crim.P. 7(c)(2). In the instant matter, Defendant was properly on notice that amounts in excess of the days charged in the Indictment would be asserted in the forfeiture proceeding because the Indictment charges a pattern of structuring over a 12-month period, in addition to separate substantive counts, and alleges an amount of $1,300,000.[2]

However, to the extent that the Government is seeking forfeiture of a particular asset, the Court must find that the Government has established a nexus between the property and the offense. See Fed.R.Crim.P. 32.2(b); see also United States v. Voigt, 89 F.3d 1050, 1087, n. 22 (3d Cir.1996) (construing 18 U.S.C. § 982(a)(1)); Libretti v. United States, 516 U.S. 29, 42 (1995) (construing 21 U.S.C. § 853 and finding that forfeiture requires factual nexus requirement). The Court's determination of such nexus "may be based on evidence already in the record ... or ... on evidence ... presented by the parties at a hearing after the verdict or finding of guilt." Fed.R.Crim.P. 32.2(b)(1). Furthermore, in criminal forfeitures, the proper burden of proof is preponderance of the evidence. See United States v. Sandini, 816 F.2d 869, 876 (3d Cir.1987); United States v. Gaskin, No. 00-6148, 2002 WL 459005, at * 8 (W.D.N.Y. 2002) (citing United States v. Bellomo, 176 F.3d 580 (2d Cir.1999)). Therefore, the Government must establish by a preponderance of the evidence the requisite nexus between the property to be forfeited and the offense of conviction.

---

[2] The Court notes that the parties do not dispute the adequacy of notice to Defendant.

In the instant matter, neither party offered any additional evidence during the forfeiture hearing. Rather, the Government supports its position by analogizing to cases involving criminal forfeiture in the context of drug and money laundering activities, see Govt. Forfeiture Br. at 1-2, and Defendant simply claims that the Government failed to connect the entire $1,300,000 amount to structuring transactions. See Def. Letter dated Apr. 20, 2005. The Court notes that most of the case law addressing criminal forfeiture involve convictions for violations of the drug and money laundering laws or the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"). Upon review of these cases, the Court finds that they are not helpful in resolving the forfeiture issue in this matter.[3] Furthermore, both the Government and Defendant conceded during the April 18, 2005 forfeiture hearing that no case law on point exists. See Unoff. Forfeiture Tr. at 15-16. The Court agrees that there is no case law addressing whether a fact finder may go beyond the substantive counts of an indictment in determining the forfeiture amount in a case where a jury finds a defendant guilty of a pattern of illegal activity within a certain time period, but the jury verdict does not specify the exact amount of money involved in such matters. However, because the jury verdict in this case is not limited in language with respect to which days were related to the pattern of illegal structuring activity, the Court finds that it can look to the entire 12-month period specified in the Indictment and jury verdict in order to determine the forfeiture amount. That

---

[3] Unlike this case, the jury verdicts in the drug, money laundering and RICO cases involving criminal forfeiture specifically identify the amount subject to forfeiture. For example, in United States v. Hasson, 333 F.3d 1264 (11th Cir.2003) (a case cited by the Government in support of its proposition that the forfeiture amount can be determined by going beyond the days specified in the substantive counts of the Indictment), the jury returned a detailed special verdict that specifically identified each of the properties and bank accounts subject to forfeiture due to the defendant's conviction of, among other things, money laundering and wire fraud. See Hasson, 333 F.3d at 1269, 1279. Unlike the jury verdict in this case, the Hasson verdict did not leave an open-ended figure of more than a certain monetary amount (i.e. $100,000) as being involved in a specific pattern of illegal activity. See also United States v. Ofchinick, 883 F.2d 1172, 1181-84 (3d Cir.1989) (involving RICO violations and jury verdict that specified exact amount forfeitable due to such violations); United States v. Sokolow, 91 F.3d 396, 414-15 (3d Cir.1996) (finding that jury verdict in RICO case specifically identified forfeitable property in amount of $125,000); United States v. Tedder, No. 02-105, 2003 WL 23204849, at *1 (W.D.Wis. Jul. 28, 2003).

determination, however, must be guided by the Government establishing by a preponderance of the evidence the requisite nexus between the amount being sought for forfeiture and the structuring offense.

In this case, the Court finds that such burden is not satisfied by simply including all cash bank deposits made by Defendant during the specified 12-month period. Indeed, the Government acknowledged during the forfeiture hearing that there were some deposits made on certain days that did not constitute a pattern of illegal structuring activity. See Unoff. Forfeiture Tr. at 4. However, the jury's special verdict found Defendant guilty of acts of structuring that involved "more than $100,000 in a 12-month period." Jury Verdict ¶ 7. Because the verdict did not specify the exact amount involved in the substantive structuring offense within that time period, the most the jury determined is that some amount above $100,000 was involved in such offense. Such finding alone is insufficient to establish the requisite factual nexus between the $1,300,000 amount and the substantive structuring offense. Second, the jury's finding that Defendant was guilty of a pattern of illegal activity does not excuse the Government from its burden of proving what bank deposits were made as a part of such pattern within the specific time period and were in fact structured deposits.

Based on the evidence presented at trial, the Court finds that most, but not all, bank deposits constituting the $1,300,000 amount were proven by a preponderance of the evidence to be part of structuring transactions. The Court has undertaken its own review of Defendant's bank records for the relevant 12-month period, all of which were in evidence, to determine by a preponderance of the evidence whether such amounts were part of a pattern of structuring activities. The Court finds that there were numerous instances, during 2-3 day periods, where Defendant made deposits in the high $9,000s, or other amounts, that when divided up were clearly under $10,000 or when considered in the aggregate, were over $10,000. The amount of these deposits, similar to those charged in the

Indictment, and the proximity in time between when such deposits were made, clearly indicate structuring activities. However, there were also days that did not reflect such activities, such as October 2, 2001 and December 4-5, 2001 (days alleged by the Government to involve structuring activities), where Defendant made relatively small deposits and did not subsequently make larger deposits until after a week's time. These days and amounts would not satisfy a verdict of mandatory forfeiture. The dates and amounts of deposits which the Court finds, by a preponderance of the evidence, to have been structured and thus subject to forfeiture are included in the attached <u>Appendix A</u>.

### III.    CONCLUSION

Therefore, based on the totality of proof, the Court finds by a preponderance of the evidence that $1,245,018 in United States currency was involved in the substantive structuring offense and thereby subject to forfeiture to the United States.

Date: June 6, 2005

<u>/s/ Freda L. Wolfson</u>
Honorable Freda L. Wolfson
United States District Judge

APPENDIX A

| | | | |
|---|---|---|---|
| January 9, 2001: | $9,500.00 | June 28, 2001: | $1,000.00 |
| January 10, 2001: | $9,500.00 | July 23, 2001: | $7,900.00 |
| | | | $9,800.00 |
| | | | $9,800.00 |
| January 11, 2001: | $1,440.00 | | |
| January 18, 2001: | $9,000.00 | September 24, 2001: | $4,000.00 |
| January 19, 2001: | $5,500.00 | September 25, 2001: | $9,500.00 |
| | | | $9,500.00 |
| March 5, 2001: | $9,600.00 | | |
| | $9,700.00 | September 26, 2001: | $1,000.00 |
| | $9,000.00 | | $5,578.75 |
| | $700.00 | | $9,800.00 |
| | $9,250.00 | | |
| | $9,100.00 | September 27, 2001: | $9,800.00 |
| | | | $9,800.00 |
| March 6, 2001: | $6,000.00 | | $9,800.00 |
| | | | $9,900.00 |
| April 3, 2001: | $1,150.00 | | $5,000.00 |
| | $3,500.00 | | $3,652.00 |
| | $9,950.00 | | $9,500.00 |
| | | | $8,700.00 |
| April 9, 2001: | $1,200.00 | | $9,800.00 |
| | $1,700.00 | | $9,800.00 |
| | $1,750.00 | | |
| | $2,500.00 | September 28, 2001: | $1,400.00 |
| | $4,200.00 | | $3,400.00 |
| | | | $6,000.00 |
| April 30, 2001: | $653.00 | | $6,600.00 |
| | $9,500.00 | | $8,400.00 |
| June 18, 2001: | $2,600.00 | October 1, 2001: | $2,550.00 |
| | $9,000.00 | | $6,000.00 |
| | $9,900.00 | | $7,500.00 |
| | | | $9,500.00 |
| June 19, 2001: | $2,400.00 | | |
| | | October 9, 2001: | $9,500.00 |
| June 27, 2001: | $3,000.00 | | $9,500.00 |
| | $9,900.00 | | |

| | | | |
|---|---|---|---|
| October 11, 2001: | $5,000.00 | November 21, 2001: | $9,500.00 |
| | | | $9,500.00 |
| October 12, 2001: | $2,500.00 | | $9,900.00 |
| | $4,600.00 | | $9,900.00 |
| | | | $9,200.00 |
| October 15, 2001: | $7,000.00 | | $9,500.00 |
| | $8,000.00 | | |
| | $9,500.00 | November 23, 2001: | $9,900.00 |
| | $9,500.00 | | |
| | $9,500.00 | November 26, 2001: | $2,800.00 |
| | $9,500.00 | | $7,000.00 |
| | $6,500.00 | | $8,100.00 |
| | $9,500.00 | | $9,700.00 |
| | $9,500.00 | | $9,900.00 |
| | | | |
| October 16, 2001: | $3,000.00 | November 29, 2001: | $3,500.00 |
| | $4,000.00 | | $9,500.00 |
| | $9,500.00 | | |
| | | November 30, 2001: | $5,600.00 |
| October 17, 2001: | $3,900.00 | | $9,000.00 |
| | $6,823.75 | | $9,010.00 |
| | $9,000.00 | | $9,540.00 |
| | $9,900.00 | | $9,700.00 |
| | | | |
| November 9, 2001: | $2,400.00 | December 3, 2001: | $9,500.00 |
| | $5,000.00 | | $9,500.00 |
| | $7,100.00 | | $9,800.00 |
| | $9,500.00 | | |
| | $9,500.00 | January 14, 2002: | $4,800.00 |
| | | | $5,030.00 |
| November 15, 2001: | $8,000.00 | | $8,000.00 |
| | $9,200.00 | | $9,800.00 |
| | | | $9,800.00 |
| November 16, 2001: | $3,100.00 | | $9,900.00 |
| | $5,000.00 | | $9,900.00 |
| | $9,900.00 | | |
| | | January 15, 2002: | $2,800.00 |
| November 19, 2001: | $8,000.00 | | $7,000.00 |
| | $8,820.00 | | $9,800.00 |
| | $9,180.00 | | $9,800.00 |
| | $9,320.00 | | |
| | $9,940.00 | January 16, 2002: | $9,400.00 |
| | | | $9,800.00 |
| November 20, 2001: | $8,000.00 | | $9,800.00 |
| | $8,270.00 | | |
| | $9,000.00 | | |
| | $9,290.00 | | |

| | |
|---|---|
| January 17, 2002: | $20.00 |
| | $2,600.00 |
| | $4,700.00 |
| | $5,000.00 |
| | $5,300.00 |
| | $7,100.00 |
| | $9,800.00 |
| | $9,800.00 |
| January 18, 2002: | $2,131.00 |
| | $3,869.10 |
| January 22, 2002: | $9,800.00 |
| | $9,800.00 |
| | $9,800.00 |
| | $7,400.00 |
| | $9,800.00 |
| January 23, 2002: | $5,700.00 |
| | $9,500.00 |
| | $9,800.00 |
| January 25, 2002: | $4,000.00 |
| | $9,800.00 |
| | $9,800.00 |
| | $9,800.00 |
| | $9,800.00 |
| | $9,800.00 |
| January 29, 2002: | $8,800.00 |
| | $9,800.00 |
| | $9,800.00 |
| | $9,800.00 |
| | $9,800.00 |
| January 31, 2002: | $7,300.00 |
| | $9,800.00 |
| | $9,800.00 |
| | $9,800.00 |
| | $9,800.00 |