# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

UNITED STATES OF AMERICA    :
              :   Criminal Action No. 03-789 (FLW)
              :
     v.        :
              :   **OPINION**
ANGELO C. RODRIGUEZ    :
_____:

**APPEARANCES:**
Christopher J. Christie, United States Attorney
By: Mark D. Larkins, Assistant United States Attorney
Office of the United States Attorney
970 Broad Street, 7th Floor
Newark, New Jersey 07102
   Attorney for the United States of America

Carroll & Brotman
By: Ellen C. Brotman, Esq. and John Rogers Carroll, Esq.
601 Walnut Street, Suite 1150
Philadelphia, PA 19106
   Attorney for Defendant Angelo Rodriguez

**WOLFSON, UNITED STATES DISTRICT JUDGE**

   This matter comes before the Court upon Defendant Angelo C. Rodriguez's Motion to Vacate the Court's Preliminary Order of Forfeiture, in which the Court entered judgment against Defendant in the amount of $1,245,018 following his conviction by a jury on a six-count Indictment charging him with knowingly structuring transactions to avoid a domestic financial institution's obligation to file currency transaction reports, in violation of 31 U.S.C. § 5313(a) and 31 U.S.C. § 5324(a)(3). The jury also found that Defendant's structuring acts constituted a pattern of illegal activity involving more than $100,000 in a twelve-month period, in violation of 31 U.S.C. § 5324(d)(2) and 18 U.S.C. § 2. As

1

required by Fed. R. Crim. P. 7(c)(2) and 32.2(a), the Indictment also contained a forfeiture allegation in which the Government asserted that Defendant's structuring activity involved $1,300,000 in United States currency, which was subject to forfeiture upon Defendant's conviction, pursuant to 31 U.S.C. § 5317(c)(1)(A).  The forfeiture allegation noted the Government's intent to seek forfeiture of substitute assets in the event it could not locate the currency involved in the offense because Defendant had transferred, dissipated, placed beyond the jurisdiction of the Court, substantially diminished, or commingled it with other funds such that it could not be subdivided without difficulty.  After trial, Defendant waived his right to have the jury decide the forfeiture allegation in the Indictment. Consequently, following a hearing on the matter before this Court, I conducted a review of the entire record and determined, by a preponderance of the evidence, that Defendant's structuring offenses involved $1,245,018 in United States currency, which was subject to forfeiture.  On June 13, 2005, I issued a Preliminary Order of Forfeiture, and entered a money judgement against Defendant in that amount.

Defendant now challenges the Court's Preliminary Order of Forfeiture on multiple grounds.  He argues that: (1) the Court should have determined the amount subject to forfeiture beyond a reasonable doubt, rather than by a preponderance of the evidence; (2) the Court lacks statutory authority to order forfeiture of substitute assets in this case; and (3) the amount subject to forfeiture is unjustly high and violates the Excessive Fines Clause of the Eighth Amendment to the Constitution.  On March 31, 2006, I heard oral argument on Defendant's Motion.  For the reasons discussed more fully below, I conclude that: (1) a forfeiture amount in a proceeding pursuant to 31 U.S.C. § 5317(c)(1)(A) need only be determined by a preponderance of the evidence; (2) 31 U.S.C. § 5317(c)(1)(B) does not authorize the Government to seize substitute assets in forfeiture proceedings following a conviction for violation of

31 U.S.C. § 5324; and (3) the forfeiture amount in this case is not grossly disproportionate to the gravity of Defendant's criminal offense and, thus, does not violate the Eighth Amendment's Excessive Fines Clause. Accordingly, Defendant's Motion to Vacate the Court's Preliminary Order of Forfeiture is denied, but the Government is precluded from seizing substitute assets, pursuant to 21 U.S.C. § 853(p), to satisfy the forfeiture amount contained therein.

## I.    FACTUAL BACKGROUND[1]

On April 4, 2005, a jury found Defendant guilty of Counts 1 through 6 of an Indictment which charged him with knowingly structuring transactions to avoid a domestic financial institution's obligation to file currency transaction reports, in violation of 31 U.S.C. § 5313(a) and 31 U.S.C. § 5324(a)(3). Jury Verdict ¶¶ 1-6. In addition, the jury found Defendant's acts of structuring were part of a pattern of illegal activity involving more than $100,000 in a twelve-month period, in violation of 31 U.S.C. § 5324(d)(2) and 18 U.S.C. § 2.[2] Id. ¶ 7. Pursuant to 31 U.S.C. § 5317(c), the Government sought forfeiture of "$1,300,000 in United States currency and all property traceable [thereto]," which it alleged constituted an amount representing all of Defendant's property involved in or traceable to offenses for which he was convicted.[3] See Indict. Forf. Alleg. ¶ 2. On April 5, 2005, Defendant waived

---

[1] On this Motion, Defendant does not challenge his criminal conviction nor the underlying facts upon which it is based. Rather, his arguments are focused narrowly on the question of what, if any, assets are subject to forfeiture as a result of his offenses. Accordingly, the factual recitation herein omits the details of Defendant's trial and presents only those matters relevant to the Court's calculation of the judgement amount in the Court's Preliminary Forfeiture Order.

[2] To be clear, the Indictment charged Defendant with six separate counts of structuring on six specific days. See Indict. ¶ 5. The Indictment also separately alleged that Defendant's acts of structuring were "part of a pattern of illegal activity involving more than $100,000.00, namely $1,300,000.00, in a 12-month period." Indict. ¶ 6.

[3] The Forfeiture Allegation also noticed the Government's intention to seek forfeiture of "other property of [Defendant's] up to the value of [$1,300,000]" as substitute assets in the event it was unable to locate the $1,300,000 due to Defendant's acts or omissions. See Indict. Forf. Alleg. ¶ 4.

3

his right to have a jury decide the applicable forfeiture amount and that duty fell to the Court. See April 5, 2005 Jury Waiver.

Defendant disputed the Government's allegation of the amount subject to forfeiture.  In an April 20, 2005 letter to the Court, he asserted that the Government's calculation of $1,300,000 was "arbitrary and capricious and not based on the evidence presented at trial." See United States v. Rodriguez, No. 03-789 slip op. at 2 (D.N.J. June 6, 2005) (memorializing the Court's forfeiture determination). Defendant argued that the Government did not establish that each of the deposits totaling $1,300,000 was involved in one of the six specific substantive structuring offenses alleged in the Indictment. Id. Accordingly, he urged the Court to restrict the total amount subject to forfeiture to the amount the jury found, beyond a reasonable doubt, connected to the substantive structuring counts of the Indictment - namely, $372,000. Id.

In response, the Government asserted that it was entitled to look beyond the six substantive counts alleged in the Indictment to calculate the total amount subject to forfeiture. Id.  The Government argued that because the jury also specifically found that Defendant engaged in of a pattern of illegal activity committed over a twelve-month period, the total forfeiture amount should not be limited to the amounts involved in the particular transactions alleged in the Indictment. Id.  Instead, the Government asserted that it was free to consider any amount involved in Defendant's banking activity during the entire period set forth in the Indictment, so long as evidence of those transactions was presented at trial, and thus formed the basis of Defendant's conviction. Id.

In a June 6, 2005 Memorandum Opinion, I held that funds beyond those specifically enumerated in the substantive counts of the Indictment, which were involved in transactions during the twelve-month period set forth in the aggregate count, were subject to forfeiture so long as the Government

4

established, by a preponderance of the evidence, a factual nexus between such funds and Defendant's offenses. Id. at 4-5.  I also noted that neither party presented any additional evidence during the post-trial forfeiture hearing, pursuant to Fed. R. Crim. P. 32.2(b)(1). United States v. Rodriguez, No. 03-789 slip op. at 5.  Consequently, relying on the evidence presented at trial, which included all of Defendant's relevant banking records for the twelve-month period specified in the Indictment, I independently evaluated Defendant's financial transactions during the period and found that "most but not all, bank deposits constituting the $1,300,000 amount [asserted by the Government as subject to forfeiture] were proven by a preponderance of the evidence to be part of" Defendant's structuring activity. Id.  After excluding certain amounts related to transactions deemed outside of Defendant's structuring activity, I concluded that $1,245,018 in United States currency constituted the total amount involved in Defendant's offenses, and was thus subject to forfeiture to the United States. Id. at 6 (setting forth exact transactions deemed subject to forfeiture in Appendix A).  On June 13, 2005, I filed a Preliminary Order of Forfeiture in which I entered judgment in the amount of $1,245,018 against Defendant.

On March 7, 2006, Defendant filed the instant Motion to Vacate the Preliminary Order of Forfeiture and the judgement entered pursuant thereto. See Def. Motion to Vacate.  The Government filed a brief in opposition to the Motion on March 17, 2006. See Gov. Opp. Br.  The parties filed supplemental briefs expanding and clarifying their arguments, and, on March 31, 2006, I heard oral argument on the Motion.[4] See Transcript of March 31, 2006 Oral Argument ("Tr.").

## II.    DISCUSSION

Before addressing Defendant's arguments, a brief discussion of the interplay between the

_____

[4] Specifically, on March 17, 2006, Defendant filed a letter clarifying his arguments, and, on March 21, 2006, filed a reply to the Government's brief.  The Government filed a surreply on March 27, 2006.

5

separate statutes imposing the currency transaction reporting requirement, prohibiting evasion of that requirement through structured transactions, imposing forfeiture as a consequence upon a conviction for structuring transactions, and facilitating seizure of property subject to forfeiture, is in order. First, 31 U.S.C. § 5313(a) establishes the authority of the Secretary of the Treasury to promulgate rules requiring domestic financial institutions to report certain transactions beyond a particular amount. Pursuant to those rules, each such financial institution "shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $ 10,000...."[5] 31 C.F.R. 103.22(b). A second statute, 31 U.S.C. § 5324, proscribes evasion of the reporting requirement. Specifically, § 5324(a)(3) provides that "[n]o person shall, for the purpose of evading the reporting requirements of section 5313(a) ... structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." The same statute also contains a provision that imposes enhanced penalties on one who "violates this section ... as part of a pattern of any illegal activity involving more than $ 100,000 in a 12-month period...." 31 U.S.C. § 5324(d)(2).

A third statute, 31 U.S.C. § 5317(c), establishes forfeiture as a penalty for violations of §§ 5313 and 5324. The forfeiture statute provides that "[t]he court in imposing sentence for any violation of [31 U.S.C. §§ 5313, 5316, or 5324], or any conspiracy to commit such violation, shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto." 31 U.S.C. § 5317(c)(1)(A). However, the forfeiture statute only establishes the substantive penalty, and does not address enforcement. Instead, the forfeiture statute incorporates the procedures in yet another statute, 21 U.S.C. § 853, to facilitate enforcement. 31 U.S.C. § 5317(c)(1)(B). Section 853 includes a

---

[5] The regulation contains certain exceptions not relevant in this case. See 31 C.F.R. 103.22(d).

list of subsections which facilitate the Government's seizure of property subject to forfeiture under 31 U.S.C. § 5317(c)(1)(A). Having set forth the statutory framework at issue, I turn to Defendant's contentions.

**A.    Burden of Proof**

Defendant presents two separate arguments in support of his contention that the Court should have determined the amount subject to forfeiture in this case beyond a reasonable doubt instead of by a preponderance of the evidence. First, he argues that Congress intended the reasonable doubt standard to apply in forfeiture proceedings under 31 U.S.C. § 5317(c)(1)(A). Second, he argues that, notwithstanding any otherwise generally applicable rule, the facts of this case require application of the reasonable doubt standard because the jury verdict does not provide an adequate factual basis to support the Court's forfeiture determination. Both contentions are without merit.

**1.    Congressional intent in forfeiture cases under 31 U.S.C. § 5317(c)(1)(A).**

Defendant asserts that Congress intended the reasonable doubt standard to apply in forfeiture proceedings under § 5317(c)(1)(A) because application of the preponderance standard violates the due process guarantee of the Fifth Amendment and the right to a jury trial under the Sixth Amendment. See Def. Rep. Br. at 5-6. The Third Circuit has not addressed Defendant's due process argument in the context of forfeiture proceedings in a structured transaction case. However, in a trilogy of cases, the Circuit has considered due process challenges to the application of the preponderance standard in proceedings under other forfeiture statutes. See United States v. Sandini, 816 F.2d 869 (3d Cir. 1987) (applying preponderance standard under the continuing criminal enterprise statute, 21 U.S.C. § 848(a)); United States v. Pelullo, 14 F.3d 881 (3d Cir. 1994) (applying reasonable doubt standard under the RICO statute, 18 U.S.C. § 1963); United States v. Voigt, 89 F.3d 1050 (3d Cir. 1996) (applying

preponderance standard under money laundering statute, 18 U.S.C. § 982(a)(1)).  While distinct forfeiture statutes must be analyzed independently, the Third Circuit's holdings in prior cases are persuasive authority for district courts considering analogous statutes. <u>Voigt</u>, 89 F.3d at 1083.  Based on the reasoning in those cases, I conclude that application of the preponderance standard in forfeiture proceedings under 31 U.S.C. § 5317(c)(1)(A) does not violate due process.

     In <u>United States v. Sandini</u>, the Third Circuit first considered the propriety of employing the preponderance standard in post-trial proceedings under a forfeiture statute. 816 F.2d at 869.  In <u>Sandini</u>, the defendant was convicted under the continuing criminal enterprise statute, 21 U.S.C. § 848(a) ("CCE").  The CCE contains a forfeiture provision that defines the substantive forfeiture penalty, but facilitates enforcement of forfeitures by reference to 21 U.S.C. § 853. <u>See</u> 21 U.S.C. § 848(a); <u>see also</u> <u>Sandini</u>, 816 F.2d at 871.  Among the applicable subsections is § 853(d), which establishes a "rebuttable presumption" that the possessions of a convicted person are subject to forfeiture "if the United States establishes by a preponderance of the evidence" that the property was acquired during or within a reasonable period after the violation and there was no other "likely source for such property." 21 U.S.C. § 853(d).

    The defendant in <u>Sandini</u> argued that the preponderance standard imposed by § 853(d) deprived him of due process. 816 F.2d at 871.  The Third Circuit disagreed, and explained that forfeiture under the CCE is a criminal penalty and not an element of the crime of which the defendant had been convicted that required proof beyond a reasonable doubt.[6] <u>Id.</u> at 875.  Accordingly, the Circuit held that the preponderance standard imposed on CCE forfeitures by § 853(d) was valid "to the extent that the forfeiture proceeding occurs only after a conviction based on the constitutional standard." <u>Sandini</u>, 816

---

[6] The defendant in <u>Sandini</u> was also convicted of certain drug conspiracy charges. 816 F.2d at 869.

F.2d at 876.

In United States v. Pelullo, the Third Circuit confronted the same question in the context of 18 U.S.C. § 1963(a), the RICO criminal forfeiture statute. 14 F.3d at 881.  Unlike the CCE, the RICO forfeiture statute is self-contained, and does not facilitate enforcement forfeitures by reference to another statute.  The Third Circuit acknowledged that difference, and the fact that the RICO forfeiture statute does not include a procedure similar to that established in 21 U.S.C. § 853(d), which imposes the preponderance standard in CCE forfeitures. Pelullo, 14 F.3d at 904.  The Circuit also noted that in 1984, Congress simultaneously amended the RICO and CCE forfeiture statutes, and added § 853(d) to the CCE but did not similarly modify the RICO forfeiture statute. Pelullo, 14 F.3d at 905.  The Third Circuit concluded that the omission was intentional and signaled "that Congress intended the higher beyond a reasonable doubt standard to control in a § 1963(a) proceeding." Id.

In a third case, United States v. Voigt, the Third Circuit considered a due process challenge to the application of the preponderance standard in proceedings under the money laundering forfeiture statute, 18 U.S.C. § 982(a)(1). 89 F.3d at 1050.  The money laundering and CCE forfeiture statutes are similar insofar as both define the substantive forfeiture penalty but refer to 21 U.S.C. § 853 to facilitate enforcement. Compare 18 U.S.C. § 982(b)(1) with 21 U.S.C. § 848(a).  However, there is an important difference between the two statutes.  The CCE incorporates all of § 853, while the money laundering forfeiture statute expressly excludes application of § 853(d), which imposes the preponderance standard in CCE forfeitures.[7]  Seizing on that difference, and relying on the Circuit's comparison of the CCE and

_____

[7] Since the Third Circuit decided Voigt, Congress has amended 18 U.S.C. § 982(b)(1) several times and altered the specific language exempting § 853(d) from the provisions applicable in money laundering forfeitures.  At the time Voigt was decided, the statute incorporated "subsections (c) and (e) through (p) of [21 U.S.C. § 853]." See Voigt, 89 F.3d at 1081.  Section 982(b)(1) now incorporates the "provisions of [21 U.S.C. § 853] (other than subsection (d) of that section)...."  For the purpose of this discussion, the changes to the statute since Voigt are irrelevant because, at all times, subsection (d) is

9

RICO forfeiture statutes in <u>Pelullo</u>, the defendant in <u>Voigt</u> argued that Congress' exclusion of § 853(d) in money laundering forfeitures evinced its intent to require application of the reasonable doubt standard in those proceedings. <u>Voigt</u>, 89 F.3d at 1083.  The Third Circuit rejected that argument. <u>Id.</u>

Instead, the Circuit held that application of the preponderance standard in money laundering forfeitures was permissible because "the amount of the transaction that forms the basis of a substantive money laundering offense will be identified in the indictment and, thus, ...  its connection to money laundering activity will have been proved beyond a reasonable doubt at trial." <u>Id.</u> at 1084.  In support of its holding, the Circuit compared the "extremely broad and sweeping" scope of the RICO forfeiture statute with its more narrowly focused money laundering counterpart. <u>Id.</u> at 1083-84.  The Circuit noted that in RICO cases "the identity and extent of property subject to forfeiture will not have been addressed in the course of proving the substantive ... charge." <u>Id.</u> at 1084.  Consequently, the Circuit explained, in the RICO context the reasonable doubt burden of proof "ensures greater accuracy in determining the scope of property subject to forfeiture." <u>Id.</u>  By contrast, the Circuit observed that the money laundering forfeiture provision is more precise and "makes clear that the government is entitled only to property 'involved in' or 'traceable to' money laundering activity." <u>Id.</u> (citation omitted).  The Third Circuit concluded that applying the reasonable doubt standard in money laundering forfeitures was unnecessary because of the substantially decreased  likelihood of accuracy problems like those possible in the RICO context. <u>Id.</u> at 1084.

The reasoning in <u>Sandini</u> is instructive, and indeed, compelling.  Accordingly, I find that application of the preponderance standard in forfeiture proceedings under 31 U.S.C. § 5317(c)(1)(A) does not violate due process.  Like the CCE forfeiture statute, the structured transaction forfeiture

--------

omitted.

statute refers to 21 U.S.C. § 853 to facilitate enforcement of forfeitures. See 31 U.S.C. § 5317(c)(1)(B). Also, unlike the money laundering forfeiture statute at issue in Voigt, the preponderance standard in § 853(d) is not excluded by 31 U.S.C. § 5317(c)(1)(B).   Based on those factors, I can discern no principled reason why the Third Circuit's holding in Sandini should not control here.

Yet, Defendant asserts that the holding in Voigt necessitates application of the reasonable doubt standard in structured transaction forfeitures. Def. Main Br. at 7-8. Essentially, he argues that 31 U.S.C. § 5317(c)(1)(A) (the structured transaction forfeiture statute) is more like 18 U.S.C. § 1963 (the RICO forfeiture statute) than 18 U.S.C. § 982(a)(1) (the money laundering forfeiture statute) or 21 U.S.C. § 848(a) (the CCE forfeiture statute).   Consequently, he asserts that application of the reasonable doubt standard in structuring cases is necessary to afford accuracy in determining the scope of property subject to forfeiture.   However, Defendant does not distinguish Sandini, and ignores the fact that the CCE forfeiture statute analyzed in that case, and the structured transaction forfeiture statute at issue here, both incorporate 21 U.S.C. § 853(d) -- which expressly imposes the preponderance standard. See 21 U.S.C. § 848(a); 31 U.S.C. § 5317(c)(1)(B).

Indeed, Voigt actually supports application of the preponderance standard in structuring forfeitures.  Among the factors that compelled the Circuit to apply the preponderance standard in money laundering forfeitures in Voigt, was the narrow focus of 18 U.S.C. § 982(a)(1), relative to the broad sweep of the RICO forfeiture statute. Voigt, 89 F.3d at 1083.  Defendant ignores the similarities between the money laundering forfeiture statute in Voigt, and the structured transaction forfeiture statute in this case.  Both are narrowly tailored and carefully define the property subject to forfeiture upon conviction.[8]   Accordingly, based on the Third Circuit's discussion of the various forfeitures

_____

[8] Specifically, 31 U.S.C. § 5317(c)(1)(A), the structured transaction provision, provides: "[t]he court in imposing sentence for any violation of section 5313, 5316, or 5324 of this title, or any

statutes in <u>Sandini</u>, <u>Pelullo</u>, and <u>Voigt</u>, and its careful analysis of the due process challenges asserted in those cases, I find that the preponderance standard provides sufficient due process protection in forfeiture proceedings in structured transaction cases.

The final component of Defendant's argument rests on the Sixth Amendment. However, recent Third Circuit and Supreme Court precedents obviate the need for much discussion on this point. Earlier this year, in <u>United States v. Leahy</u>, 483 F.3d 328 (3d Cir. 2006), the Third Circuit, sitting <u>en banc</u>, held that application of the preponderance standard in forfeiture proceedings does not violate the Sixth Amendment, and reaffirmed the constitutionality of its application in money laundering forfeitures. In <u>Leahy</u>, the Third Circuit based its holding on <u>Libretti v. United States</u>, 516 U.S. 29 (1995), in which the Supreme Court "flatly held" that "the Sixth Amendment is not implicated in the forfeiture context." 483 F.3d at 332. The <u>Leahy</u> defendants argued that the Supreme Court's holdings in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>United States v. Booker</u>, 543 U.S. 220 (2005), implicitly overruled the Court's prior holding in <u>Libretti</u> and urged the Third Circuit to require application of the reasonable doubt standard in money laundering forfeiture proceedings. The Third Circuit acknowledged the "tension" between <u>Booker</u> and <u>Libertti</u> but was "not dissuaded from [its] conclusion that <u>Libretti</u> controll[ed] the issue." <u>Id.</u> The Third Circuit went on to note that the Second, Sixth and Seventh Circuits had all similarly held that "<u>Libretti</u> remains Supreme Court authority by which [the Courts of Appeals] are bound." <u>Id.</u> at 333.

Here, Defendant essentially repeats the arguments advanced by the <u>Leahy</u> defendants and urges

---

conspiracy to commit such violation, shall order the defendant to forfeit *all property, real or personal, involved in the offense and any property traceable thereto*." (Emphasis added). The money laundering provision is nearly identical, and provides: "[t]he court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States *any property, real or personal, involved in such offense, or any property traceable to such property*. 18 U.S.C. § 982(a)(1) (Emphasis added).

this Court to do what the Third Circuit declined to do in <u>Leahy</u>- - overrule a Supreme Court precedent. <u>See</u> Def. Rep. Br. at 5-6.  It is axiomatic that this Court lacks such power. <u>See</u> <u>Roper v. Simmons</u>, 543 U.S. 551, 594 (2005) (Scalia, J., dissenting) ("it remains 'this Court's prerogative alone to overrule one of its precedents'") (quoting <u>State Oil Co. v. Khan</u>, 522 U.S. 3, 20 (1997)).  Accordingly, the matter of the Sixth Amendment's impact on forfeiture proceedings is settled.  Defendant's quarrel with the wisdom of <u>Leahy</u> and <u>Libretti</u> is a matter best addressed on appeal.  Having considered Defendant's Fifth and Sixth Amendment arguments and found them lacking, I conclude that Congress clearly intended the preponderance standard to apply in forfeiture proceedings under 31 U.S.C. § 5317(c)(1)(A).

**2.** **Whether the facts of this case warrant application of the reasonable doubt standard.**

Next, Defendant asserts that the reasonable doubt standard should apply in this case because the Court's jury instructions at trial were inadequate and "left gaps in the jury's findings." Def. Rep. Br. at 6.  The argument is an attempt to secure indirectly what is unavailable directly, and essentially restates Defendant's general Fifth and Sixth Amendment contentions in the form of discrete factual challenges to the sufficiency of the Court's jury instructions.  Defendant proffers three specific arguments.  First, he claims that because the Court did not instruct the jury that a finding of guilt on each count in the Indictment required unanimous agreement that each charged deposit constituted a structured transaction, the Court's reliance on the jury's guilty verdict to determine the total forfeiture amount was flawed. Def. Main Br. at 8-10.  Second, he argues that because the Court did not define the term "approximate" in its general instruction to the jury, the jury's verdict "cannot be deemed to include a determination of any amount involved in the offenses charged, including the threshold amount of $100,000." <u>Id.</u> at 10.  Third, Defendant argues that because the Court failed to define the terms "pattern"

and "illegal activity", or the phrase, "in a 12 month period", in Final Question 7 of the Verdict Form ("Final Question 7"), the jury's response did "not provide the Court with a basis to find any forfeitable amount." Id. at 12.

The Government construes Defendant's three arguments on this issue as "essentially a motion for a new trial" pursuant to Fed. R. Crim. P. 33(a), which it argues should be denied as out of time. See Gov. Opp. Br. at 4-6.[9] The Government also asserts that to the extent Defendant's arguments are merely objections to the Court's jury instructions, they are untimely and should be dismissed pursuant to Fed. R. Crim. P. 30(d).[10] See Id. Neither contention is correct in the context of this Motion. Defendant is not challenging his underlying conviction, and his arguments address only the propriety of the Court's forfeiture determination. Accordingly, Fed. R. Crim. P. 33 is inapposite. Furthermore, I find that Defendant's challenges to the Court's jury instructions cannot be fairly characterized as objections to those instructions as contemplated by Fed. R. Crim. P. 30(d). Defendant does not assert that the disputed jury instructions were insufficient to support his conviction, but rather, that those instructions are insufficient to support the Court's determination of a forfeiture amount. Applying Fed. R. Crim. P. 30(d) to bar Defendant's arguments would elevate form over substance and deny Defendant the

---

[9] A motion for new trial, which is not brought on the grounds of the discovery of new evidence, must "be filed within 7 days after the verdict ... or within such ... time as the court sets during the 7-day period." Fed. R. Crim. P. 33(b)(2); see also Eberhart v. United States, ___, U.S. ___,126 S. Ct. 403 (2005).

[10] Objections to jury instructions must be brought to a court's attention prior to the jury's deliberations. Fed. R. Crim. P. 30(d). Objections brought out of time are subject to plain error analysis. Fed. R. Crim. P. 52(b). See, e.g., United States v. Cotton, 535 U.S. 625, 631(2002). Here, the Government argues that Defendant's challenges to the Court's jury instructions should be dismissed because he did not present them prior to the jury's deliberations, and cannot now demonstrate plain error as to any of his contentions.

14

opportunity to present a legitimate argument in defense of his interests.[11] See, e.g., Powell v. Ridge, 247 F.3d 520, 523 n.2 (3d Cir. 2001) ("decisions on the merits are not to be avoided on grounds of technical violations of procedural rules") (quoting Polonski v. Trump Taj Mahal Associates, 137 F.3d 139, 144 (3d Cir.1998), *cert. denied*, 525 U.S. 823 (1998)).  While Defendant's arguments may not carry the day, the Court will not dismiss them on purely procedural grounds.

To obtain the relief he seeks, Defendant must first show that he is entitled to application of a standard of proof at sentencing other than that mandated by the Third Circuit, based on the particular facts of his case.  In that connection, he relies on United States v. Kikumura, 918 F.2d 1084, 1101 (3d Cir. 1990).  In Kikumura, the Third Circuit considered a defendant's appeal from a district court's upward departure from the Sentencing Guidelines, which resulted in an increased sentence from thirty months to thirty *years* (the equivalent of a twenty-two-level increase in the defendant's offense level). Id. at 1100.  The Circuit described the case as "perhaps the most dramatic example imaginable of a sentencing hearing that functions as 'a tail which wags the dog of the substantive offense[,]'" and explained that in such an "extreme context ... a court cannot reflexively apply the truncated procedures that are perfectly adequate for all of the more mundane, familiar sentencing determinations." Id. at 1101. Consequently, the Circuit held that in such extreme situations "the factfinding underlying [a] departure [from the Sentencing Guidelines] must be established by at least a clear and convincing standard, rather than a preponderance of evidence. Id.  However, the Circuit cautioned that such specific departures from

---

[11] The Court notes that the guilt and forfeiture phases of these proceedings were bifurcated. Thus, I did not begin calculating a forfeiture amount until after the jury rendered its guilty verdict. Consequently, it would have been impossible for Defendant to comply with Fed. R. Crim. P. 30(d) and assert these challenges to my jury instructions -- for the purpose of attacking my Preliminary Order of Forfeiture - - prior to the jury's deliberations.  Further, Defendant has retained new counsel since his trial, and his current counsel was not in a position to satisfy the requirements of either Fed. R. Crim. P. 33(a) or Fed. R. Crim. P. 30(d).  In any event, the Rules cited by the Government simply do not apply to Defendant's arguments.

otherwise generally applicable legal rules should be exceedingly rare. Id. ("Obviously, an appropriate level of procedural protection cannot be calibrated on a sliding-scale, case-by-case basis").

The facts of this case are not analogous to the extreme facts in Kikumura, and Defendant's argument that he is entitled to enhanced procedural protections must fail.  Defendant faces nothing close to the twelve-fold increase in sentencing faced by the defendant in Kikumura.  The $1,245,018 forfeiture amount here is not a shocking penalty which overshadows Defendant's substantive offense. To the contrary, Defendant faces a maximum term of up to ten-years imprisonment and an aggregate fine of $3,000,000 ($500,000 per count). See Gov. Opp. Br. at 16-17 (citing 31 U.S.C. § 5324(d)(2) and U.S.S.G. § 5E1.2(c)(4)).  In light of those serious consequences, the forfeiture in this case cannot be fairly compared to the upward departure from the Sentencing Guidelines in Kikumura.  Even if I were to find otherwise, there is no authority to support Defendant's request for application of the reasonable doubt standard.  In Kikumura, the Third Circuit concluded that the clear and convincing evidence standard afforded the defendant adequate protection from arbitrary or unreliable fact finding. 918 F.3d at 1101.  Defendant presents no case in which a court has followed Kikamura and raised the applicable standard of proof at sentencing to the clear and convincing standard, nor any in which a court exceeded the Third Circuit's actions by imposing the reasonable doubt standard. Accordingly, departure from the mandated standard of proof in this case is unjustified.

Notwithstanding this threshold failure, analysis of Defendant's specific arguments reveal them to be without merit.  First, Defendant argues that the Court should have given the jury a specific unanimity instruction that required jurors to identify which individual deposits from each count in the Indictment they agreed upon.  Defendant asserts that without such a charge, the jury's verdict cannot support the Court's forfeiture determination, which includes many of the deposits alleged by the

Government in each count. Despite Defendant's assertions to the contrary, no specific unanimity charge was required in this case. Instead, the Court's general unanimity instruction was more than sufficient.[12]

Defendant relies on United States v. Beros, 833 F.2d 455 (3d Cir. 1987). In Beros, the Third Circuit vacated the defendant's conviction on certain counts of an indictment, and found that the trial court's general unanimity instruction was insufficient to protect the defendant's Sixth Amendment rights. 833 F.2d at 462. The Circuit held that a specific unanimity instruction was required because the Government charged, in one count, "several distinct acts, any of which might have provided the basis for a guilty verdict on several distinct theories." Id. at 462. The Circuit was concerned with preventing instances in which a jury reached a composite verdict, or one in which different pools of jurors found different facts that, separately, could have established guilt under one of multiple theories of guilt but together left the jury without unanimity on any single theory alleged in a particular count. Id. 461-62. Beros is inapposite.

Here, the Government charged only a single theory of guilt in each count of the Indictment. Therefore, unanimity on each individual deposit or particular groups of deposits was unnecessary because no single deposit or group of deposits was sufficient to constitute a distinct theory of guilt. "Each and every structuring offense, by nature, entails multiple transfers of funds in amounts small enough to avoid detection." United States v. Handakas, 286 F.3d 92, 97-99 (2d Cir. 2002), overruled on other grounds by, United States v. Rybicki, 354 F.3d 124 (2d Cir. 2003). However, in a prosecution under 31 U.S.C. § 5324, "the structuring itself, and not the individual deposit, is the unit of crime." United States v. Davenport, 929 F.2d 1169, 1172 (7th Cir. 1991). In this case, the Court provided the

---

[12] Before excusing the jury to deliberate, I instructed them that "to return a verdict in this matter it is necessary that each juror agree thereto. You should go through each count separately and as to each count, your verdict must be unanimous, i.e., your verdict on each count must be twelve to nothing as to whether you find the defendant guilty or not guilty." See Jury Chrg. at 25.

jury with a general unanimity instruction, to which I must assume it adhered.  See United States v. Edmonds, 80 F.3d 810, 825 (3d Cir. 1996) (observing that a court must assume that the jury follows the instructions given).  That instruction clearly conveyed the jury's obligation to carefully consider each count and reach a unanimous verdict.  The jury was not required to reach unanimous consensus as to each deposit in a particular count, because no composite verdict was possible.

More importantly, the defendant in Beros asserted his argument as a direct challenge to his criminal conviction.  By contrast, Defendant's concern here is not whether the Court's jury instruction protected him from an unfair composite verdict, but whether the Court properly relied on the jury's verdict as a basis for its forfeiture determination.  In that connection, Beros provides no guidance at all.  Moreover, I addressed Defendant's argument on this issue in my June 6, 2005 Memorandum Opinion, in which I explained:

> [T]here is no case law addressing whether a fact finder may go beyond the substantive counts of an indictment in determining the forfeiture amount in a case where a jury finds a defendant guilty of a pattern of illegal activity within a certain time period, but the jury verdict does not specify the exact amount of money involved in such matters. However, because the jury verdict in this case is not limited in language with respect to which days were related to the pattern of illegal structuring activity, the Court finds that it can look to the entire 12-month period specified in the Indictment and jury verdict in order to determine the forfeiture amount.

United States v. Rodriguez, No. 03-789 slip op. at 4.  As I made clear then, and reiterate now, all funds that were involved in structured transactions during the twelve-month period set forth in the aggregate count of the Indictment, including those represented by each of the deposits charged in the separate substantive counts, were subject to forfeiture so long as the Government established, by a preponderance of the evidence, a factual nexus between such funds and Defendant's offenses. Id. at 3.  Accordingly, no specific unanimity instruction at trial was required to support my later consideration of the total amount subject to forfeiture.

Defendant's second attack on the jury's findings focuses on the Court's use of the term "approximate" in its general instruction regarding the Government's burden to prove the amounts charged in the separate substantive counts in the Indictment.  The Court instructed the jury that the Government was not obliged to prove the exact amounts of money enumerated in the Indictment, and that the evidence need only establish "beyond a reasonable doubt that the sums of money involved in this case approximate the amounts charged in the indictment."[13]  Defendant argues that the Court should have defined the word "approximate" for the jury, and that because it did not, the instruction rendered the jury's verdict on all counts unreliable, and an improper basis from which to calculate the forfeiture amount.

To meet its burden on the separate substantive counts in the Indictment, the Government was required to prove that Defendant, "for the purpose of evading the reporting requirements of section 5313(a) ... [did] structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." See 31 U.S.C. § 5324(a)(3).  The government was not required to prove the precise amounts of the particular transactions in those counts because those amounts are not elements of an offense under § 5324(a)(3).  The sole function of the jury instruction at issue here was to acknowledge that fact, and ensure that the jury focused on the actual elements of Defendant's crime rather than the precise financial figures in the Government proofs.  The instruction had no bearing on the Court's subsequent determination of a forfeiture amount.  Moreover, no definition of the word "approximate" was required because the term is one of common usage and,

---

[13] The complete instruction provided: "You will also note that the Indictment contains allegations that certain sums of money were structures by the defendant.  It is not necessary that the United States prove the precise amounts of money named in the indictment.  It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the sums of money involved in this case approximate the amounts charged in the indictment." See Jury Chrg. at pg. 22.

especially in the context of the Court's instruction, its meaning self evident.

Defendant also contends that the Court's use of the word "approximate" in its general instruction compromised the reliability of the jury's guilty verdict on the aggregate count of the Indictment. However, he overlooks the specifically-tailored description of the aggregate offense contained in the Verdict Sheet, which superceded the general instruction. See Verdict Sheet ¶ 7. The text of Final Question 7 directly tracks the language of 31 U.S.C. § 5324(d)(2), and asks whether the jury found that "the act(s) of structuring committed by the defendant was part of a pattern of illegal activity involving *more than $100,000 in a twelve month period*."[14] (emphasis added). See Verdict Sheet ¶ 7. The jury's affirmative response and conviction on the aggregate count represents its unanimous finding that the amount involved in Defendant's crimes was "more than $100,000" and that relevant structuring activity spanned a twelve-month period. The jury was not asked to find the precise amount involved in the pattern of activity, but only to determine whether the amount involved a sum greater than the threshold dollar amount specified in § 5324(d)(2), which it did. Accordingly, the jury's verdict on the aggregate count is sound and a proper basis for the Court's forfeiture determination.

Defendant's reliance on United States v. Barbosa, 271 F.3d 438 (3d Cir. 2001), is misplaced. Barbosa concerned a defendant who was convicted and sentenced on the basis of drugs he had actually smuggled into the United States, rather than those he believed he had been smuggling. Id. at 444. On appeal, the Third Circuit relied on the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), and held that the identity of the drugs constituted an element of the defendant's crime that

---

[14]  The complete text of Final Question 7 provides: "If you have found the defendant guilty of any one of the six counts stated above, please answer this final question: 7. Do you find that the act(s) of structuring committed by the defendant was part of a pattern of illegal activity involving more than $100,000 in a 12 month period?" See Verdict Sheet, ¶ 7.

should have been presented to the jury for a finding beyond a reasonable doubt.[15] Id. at 444-45.  Unlike Barbosa, in this case, the particular element of the offense at issue *was* submitted to the jury for a determination beyond a reasonable doubt.  That element was not the exact amount of money Defendant structured, but whether the amount of money he structured was "more than $100,000."  See 31 U.S.C. § 5324(d)(2).  That precise question was presented to the jury in Final Question 7.  See Verdict Sheet ¶ 7; see also *supra* n.14.  There is no basis upon which to conclude that my use of the term "approximate" - - without definition - - in an instruction in connection with the deposit amounts alleged in the separate substantive structuring counts tainted the jury's finding on the aggregate count.

Defendant's third attack on the jury's findings challenges the Court's failure to define certain terms contained in Final Question 7.  Specifically, he asserts that the Court's failure to define the terms "pattern" and "illegal activity", and the phrase, "in a 12 month period" in Final Question 7 rendered the jury's response to the question unreliable and an improper basis for the Court's forfeiture determination.  Defendant presents no legal authority in support of his assertion that the challenged terms required definition by the Court.  In fact, case law provides that generally, "[a] defendant is not entitled to instructions on the definition of every word in an instruction." United States v. Lee, 356 F.3d 831, 838 (8th Cir. 2003).  It is a well settled that, when a term used in a jury instruction carries its ordinary meaning, no definition of the term by the Court is required.  United States v. Robinson, 435 F.3d 1244, 1249-50 (10th Cir. 2006).  Indeed, as discussed in Robinson, various Courts of Appeals have refused

---

[15] In Apprendi the Supreme Court held that the Due Process Clause of the Fifth Amendment required that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.  The Court then endorsed the concept that, with the exception of recidivism, "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." Id. (internal quotations and citation omitted).

to find error in many cases where lower courts did not define terms such as: "materiality", "possession", "in relation to", and "knowingly" -- notwithstanding that such terms could easily be construed as terms of art with legal meaning. Id.  By contrast, the terms Defendant argues this Court should have defined -- "pattern" and "illegal activity", and the phrase, "in a 12 month period" -- are used in everyday conversation, and their meanings are self evident.  No definitions were required.

As stated earlier, Defendant's attacks on the Court's jury instructions merely convert his broad Fifth and Sixth Amendment arguments into discrete challenges to the sufficiency of the jury verdict as a basis for the Court's forfeiture determination.  Understood collectively, Defendant's three arguments imply that the jury should have made unanimous and specific findings beyond a reasonable doubt as to each and every deposit that the Court considered to determine the forfeiture amount.  However, the Supreme Court and Third Circuit, in Libretto and Leahy, respectively, have both rejected that proposition.  The jury's verdict is sound and provided more than sufficient basis for the Court's forfeiture determination.  Defendant's attacks on the Court's jury instructions are without merit, and there is no basis on the particular facts of this case to justify departure from the preponderance standard.

**B.     Forfeiture**

Next, Defendant argues that the Court is powerless to order forfeiture of any assets in this case for two reasons.  First, he notes that 31 U.S.C. § 5317(c)(1)(A) does not provide for forfeiture of any assets other than those "involved in the offense" or "traceable thereto."  He contends, that because the money he used in the transactions he structured has since been dissipated, and there are no assets "traceable" to his offense, the Government is without recourse under § 5317(c)(1)(A). Def. Main Br. at 2.  Second, Defendant argues that 21 U.S.C. § 853(p), the substitute assets provision of the forfeiture mechanism used in structured transaction cases, is not incorporated by 31 U.S.C. § 5317(c)(1)(B). Def.

Rep. Br. at 1-5.  Consequently, he argues that because he no longer possess assets "involved in the offense or traceable thereto", and the Government is not entitled to seize substitute assets, there is nothing to be forfeited and the Court must vacate its Preliminary Order of Forfeiture.

As discussed below, the Court finds that forfeiture of substitute assets is not authorized in cases under 31 U.S.C. § 5317(c).  Therefore, in a prosecution involving structured transactions in violation of 31 U.S.C. § 5324, substitute assets are not subject to forfeiture unless otherwise authorized by a separate applicable statute.  However, that does not leave the Government without recourse because criminal forfeitures are in personam proceedings in which a money judgement in the amount of the forfeiture attaches to a defendant, personally.

**1.      Availability of property subject to forfeiture under § 5317(c).**

Defendant argues that under § 5317(c)(1)(A), only assets "involved in the offense" or "traceable thereto", which exist at the time of a defendant's forfeiture hearing, are subject to forfeiture.[16]  See Def. Main Br. at 2-5.  He asserts that because the Government failed to prove that any such assets existed at the time of his forfeiture hearing, and none now exist, there is nothing for him to forfeit.  Defendant faults the Government for "simply" seeking a money judgment in the amount it alleged was structured.  However, while § 5317(c)(1)(A) can be read to support Defendant's argument, case law makes clear that criminal forfeitures are in personam proceedings after which a forfeiture amount alleged in an indictment and proved at trial  attaches to the particular defendant.[17]  See United States v. Voigt, 89 F.3d

---

[16] Section 5317(c) states in relevant part:
The Court, in imposing sentence for any violation of §5313, 5316 or 5324 of this Title, or any conspiracy to commit such violation, shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto.
(B) Procedure. - Forfeitures under this paragraph shall be governed by the procedures established in §413 of the Controlled Substances Act.

[17] At oral argument on his Motion, Defendant conceded that criminal forfeitures are in personam proceedings, and that the Court correctly ordered a money judgment against him. Tr. 20-21. Defendant

1050, 1084  (3d Cir. 1996) ("the amount of forfeiture to which the government is entitled under 18

U.S.C. § 982 is not dictated by whether the government can prove that certain of the defendant's

property is in fact property "traceable to" [illegal activity]); see also Sandini, 816 F.2d at 872-73

(observing that criminal in personam forfeitures are intended to punish culpable individuals, and thus

different from civil in rem forfeitures, which attach to particular property).

Here, the jury convicted Defendant of the structuring alleged in each substantive count, as well

as that in the aggregate count, which alleged structuring in an amount greater than $100,000 in a twelve-

month period.  Accordingly, the Court's calculation of $1,245,018 represents the total amount "involved

in" Defendant's offenses and therefore subject to forfeiture.  The only question that remains is the

procedure by which the Government may collect on that in personam judgment.  At oral argument on

Defendant's Motion, defense counsel suggested that the Government could proceed in a civil action to

execute on the judgment entered in the Court's eventual Final Order of Forfeiture. Tr. 26-28.  However,

that issue is not directly before the Court on this Motion, nor is it addressed in the extensive briefing

submitted by either party.  Accordingly, I leave it to the Government to determine the exact manner in

which it will proceed.

**2.      Forfeiture of substitute assets under 21 U.S.C. § 853(p).**

Defendant argues that 21 U.S.C. § 853(p), which authorizes forfeiture of substituted assets in

proceedings pursuant to other forfeiture statutes, does not apply in structured transaction cases.[18] See

---

disputed only the extent of the judgement authorized by the jury verdict in this case. Id. at 21.

[18] At oral argument on Defendant's Motion, I first considered whether Defendant's challenge to the Government's intention to seek forfeiture of substitute assets was ripe for consideration since my Preliminary Order of Forfeiture was not yet final, triggering the Government's right to begin proceedings to seize such assets. Tr. 6-10.  The Government informed the Court that it indeed planned to seek forfeiture of substituted assets to satisfy the judgement amount, and that it had already noticed Defendant in writing of the particular assets against which it intended to proceed. Id. at 8.  Based on that on-the-record notice, I determined that consideration of Defendant's arguments on this issue was timely. Id. at 9.

Def. Rep. Br. at1-5.  He reaches that conclusion after analyzing the language of two statutes used by Congress to refer to § 853 as the mechanism through which the Government may effect seizure of property subject to forfeiture.  Specifically, Defendant compares the incorporating language of the money laundering statute, 18 U.S.C. § 982(b)(1), to its structured transaction counterpart, 31 U.S.C. § 5317(c)(1)(B).  Defendant notes that 18 U.S.C. § 982(b)(1) incorporates the "*provisions*" of § 853, while 31 U.S.C. § 5317(c)(1)(B) incorporates the "*procedures*" of § 853.  He asserts that Congress' use of the word "provision" in § 982(b)(1) reflects its intention to incorporate all of § 853, while Congress' use of the word "procedures" in § 5317(c)(1)(B) reflect its intention to incorporate only the procedural elements of § 853.  Defendant further argues that § 853(p), which authorizes forfeiture of substituted assets, is a substantive provision and therefore not incorporated by § 5317(c)(1)(B).

The Government disagrees with Defendant's statutory analysis and asserts that Congress' use of the term "provision" in § 982(b)(1), but "procedures" in § 5317(c)(1)(B), is a meaningless distinction, and evinces no intention on the part of Congress to limit the application of § 853(p) in structured transaction forfeiture cases. Gov. Surreply at 1.  Moreover, the Government asserts that if Congress intended to bar the Government from seizing substitute assets in structured transaction forfeitures, it would have done so directly.  The Government also argues that <u>Fed. R. Crim. P.</u> 32.2(e)(1)(B) provides for forfeiture of substitute assets.[19]  Finally, the Government contends that even if § 5317(c)(1)(B) incorporates only the procedural elements of § 853, the substitute assets provision in § 853(p) is merely procedural, and thus applies in structuring forfeitures.

"Statutory interpretation begins with the 'literal meaning of words employed.'" <u>Commonwealth,</u>

---

[19] I dispense with the Government's argument on this point by noting that <u>Fed. R. Crim. P.</u> 32.2(e)(1)(B), by its own terms, makes clear that the Government may only seize a substitute asset "*that qualifies for forfeiture under an applicable statute.*"(emphasis added).  It is not independent authority for seizure of substitute assets in forfeiture cases.

Dep't of Public Welfare v. United States HHS, 928 F.2d 1378, 1385 (3d Cir. 1991) (quoting Flora v. United States, 357 U.S. 63, 65 (1958)).   Each word in the text of a statutory provision should be ascribed its ordinary meaning.  See FDIC v. Meyer, 510 U.S. 471, 476 (1994).   When a statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms." Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000) (internal quotation marks omitted); see also United States v. Atiyeh, 402 F.3d 354, 364 (3d Cir. 2005) ("The plain language of the statute is clear and we must adhere to it"). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. United States Postal Serv., ___ U.S. ___, ___, 126 S. Ct. 1252, 1257 (2006). "The use of different terms within related statutes generally implies that different meanings were intended." Cunningham v. Scibana, 259 F.3d 303, 308 (4th Cir. 2001) (quoting 2A Norman J. Singer, Sutherland's Statutes and Statutory Construction § 46.06, at 194 (6th ed. 2000)); cf. Legacy Emanuel Hosp. and Health Ctr. v. Shalala, 97 F.3d 1261, 1265 (9th Cir. 1996) (rejecting government's argument that "no significance should attach to Congress's use of different terms in adjacent [Medicare] provisions" because "the use of different language by Congress creates a presumption that it intended the terms to have different meanings").

The structured transaction forfeiture statute requires a court imposing sentence to order a defendant to forfeit "all property, real or personal, involved in the offense and any property traceable thereto." 31 U.S.C. § 5317(c)(1)(A).  The statute does not set forth the manner in which the Government may seize such property, and, instead, refers to 21 U.S.C. § 853 to effect that objective. See 31 U.S.C. § 5317(c)(1)(B).  Specifically, § 5317(c)(1)(B) states that "[f]orfeitures under this paragraph shall be

governed by the procedures established in [21 U.S.C. § 853]". To be sure, Congress could have employed any one of countless alternative methods to refer to § 853 at the time it drafted § 5317(c)(1)(B). It could have used language like that it employed in the CCE forfeiture statute, and required a court to sentence a convicted defendant "to the forfeiture prescribed in [21 U.S.C. § 853]". See 21 U.S.C. § 848(a). Or, it could have amended § 5317(c) to include provisions to effect the seizure of assets subject to forfeiture, like the RICO forfeiture statute. See 18 U.S.C. § 1963(m). Instead, Congress used nearly identical language to that it employed in the money laundering forfeiture statute, 18 U.S.C. § 982(b)(1), which also refers to § 853 to facilitate forfeitures.[20] However, Congress included one variation between the two statutes: rather than using the term "provisions" as it did in § 982(b)(1), it used the word "procedures" in § 5317(c)(1)(B).

Congress' election to use different terms in these two clearly related statutes makes no sense if it intended the words to have the same effect. Consequently, the separate terms must have distinct meanings. See, e.g., Cunningham, 259 F.3d at 308; Legacy Emanuel Hosp. And Health Ctr., 97 F.3d at 1265. The Court finds that Congress' purposeful use of the term "procedures" in § 5317(c)(1)(B) evidences its intent to restrict incorporation of the provisions of § 853 to only those that provide a procedure for seizing assets subject to forfeiture in § 5317(c)(1)(A). Accordingly, assuming the substitute assets provision, § 853(p), is substantive rather than procedural, it is not applicable in structured transaction forfeitures.

This result is not dictated by statutory analysis and construction alone, but is also clear from the

---

[20] Specifically, 18 U.S.C. § 982(b)(1) provides in relevant part:
The forfeiture of property under this section, including any seizure and disposition of the property and any related judicial or administrative proceeding, *shall be governed by the provisions* of [18 U.S.C. § 853] (other than subsection (d) of that section)....

particular framework developed by Congress to impose punishment for currency reporting violations. That framework reflects Congress' rational policy determination to treat more egregious criminal offenses, such as money laundering, RICO violations, and crimes involving a continuing criminal enterprise - - crimes for which forfeiture of substitute assets is generally authorized[21] - - differently than mere currency reporting violations, which are "not inevitably nefarious."[22] Ratzlaf v. United States, 510 U.S. 135, 144 (1994).  That policy choice is evident in the terms of § 5317(c)(1)(A), which groups only two other crimes with § 5324, both of which are also currency reporting violations: failure of a domestic bank or other financial institution to report certain financial transaction pursuant to 31 U.S.C. § 5313, and failure of an individual to report international money transfers pursuant to 31 U.S.C. § 5316.

Congress has also exercised cautious management of its power to impose forfeiture of substitute assets among the more serious classes of crimes in which such a penalty is typically authorized.  For example, in money laundering cases, 18 U.S.C. § 982(b)(2) specifically limits the Government's right to seize substitute assets where a defendant acted only as an intermediary who handled, but did not retain, property in the course of a money laundering offense, unless the circumstances of the offense are aggravated.[23]  Similarly, the Third Circuit has narrowly interpreted statutes authorizing forfeiture

---

[21] See 18 U.S.C. § 982(a)(1) (money laundering); 18 U.S.C. § 1963(m) (RICO); and 21 U.S.C. § 848(a) (CCE).

[22] By no means do I intend to imply that Defendant's conduct in this case is not serious.  It goes without saying that "splitting up transactions involving tens of thousands of dollars in cash for the specific purpose of circumventing a bank's reporting duty -- is hardly ... innocuous activity." Ratzlaf v. United States, 510 U.S. 135, 155 (1994) (Blackmun, J., dissenting).  However, recognizing distinctions of category and degree between and among various types of reprehensible behavior is a necessary and appropriate feature of our criminal law.

[23] Specifically, 18 U.S.C. § 982(b)(2) provides:
The substitution of assets provisions of [21 U.S.C. § 853(p)] shall not be used to order a defendant to forfeit assets in place of the actual property laundered where such defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three

of substitute assets.  In a case under the RICO forfeiture statute, the Third Circuit held that the Government is not entitled to pre-indictment seizure of substitute assets. In re Assets of Martin, 1 F.3d 1351, 1360 (3d Cir. 1993) ("Congress intended to exclude substitute assets from the property subject to preliminary restraints"). After rejecting the Government's argument for a broad interpretation of the substitute assets provision of the RICO forfeiture statute, the Circuit noted that its holding "comport[ed] with the Supreme Court's cautious interpretation of the scope of forfeiture provisions." Id.

The Government argues that if Congress intended to bar or limit forfeiture of substitute assets in structured transaction cases, it would have done so expressly, as it did in § 982(b)(2) of the money laundering forfeiture statute. See supra n.23.  The Government also highlights Congress' express exclusion of the rebuttable presumption in § 853(d) from forfeiture proceedings under the money laundering statute, in § 982(b)(1), as further evidence in support of its argument.  However, the Government's examples are not dispositive.  Giving meaning to the distinct words used by Congress in the money laundering and structured transaction forfeiture statues which refer to § 853, it becomes clear that Congress did not expressly limit § 853(p) in structuring cases because it had already done so. That is, by its careful use of particular language in § 5317(c)(1)(B) to incorporate only the "procedures" of § 853, Congress obviated the need for express exclusion of substantive provisions such as § 853(p). The Government's argument to the contrary would require the Court to interpret identically the distinct terms in 31 U.S.C. § 5317(c)(1)(B) and 18 U.S.C. § 982(b)(1).  Such an interpretation would render meaningless Congress' decision to employ different language in the two related statutes.

Finally, the Government argues that even if § 5317(c)(1)(B) incorporates only the procedural elements of § 853, the substitute assets provision in § 853(p) is procedural rather than substantive, and

---

or more separate transactions involving a total of $100,000 or more in any twelve month period.

thus applies in structuring cases.  For the reasons that follow, I find that § 853(p) is a substantive provision which alters or defines a defendant's rights in an applicable forfeiture proceeding. Accordingly, it is not among the procedural subsections of § 853 that Congress intended to apply in the context of forfeitures following a conviction for structuring transactions.

The word "procedure" is not ambiguous.  The Supreme Court has defined a rule of "procedure" as one which sets forth a particular manner of proceeding or way of doing something. Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 80 (1995).  A procedural rule regulates "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." Hanna v. Plummer, 380 U.S. 460, 464 (1965) (quoting Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941)).  A substantive rule of law creates and defines the rights, duties, and obligations that are subsequently administered by procedural rules of law. Hanna, 380 U.S. at 464.  While a procedural rule may affect a substantive right, any such effect must be incidental and may not materially modify a right granted by the substantive rule of law. Id.

Section 853(p) authorizes the government to seize from a defendant against whom forfeiture has been ordered any property of an equivalent value to the property originally subject to forfeiture, if, as a result of that defendant's behavior, the original property subject to forfeiture is unavailable.[24]  The

---

[24] Specifically, 21 U.S.C. § 853 provides:
(1) In general
Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant--
(A) cannot be located upon the exercise of due diligence;
(B) has been transferred or sold to, or deposited with, a third party;
(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) has been commingled with other property which cannot be divided without difficulty.
(2) Substitute property
In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

provision clearly defines a defendant's rights, duties, and obligations after conviction of a crime for which forfeiture is an available penalty.  In doing so, the provision goes beyond simply setting forth a manner of proceeding or a simple way of doing something.  Rather, § 853(p) allows the government access to assets wholly unrelated to the crime for which a defendant has been convicted and authorizes the government to seize those "innocent" assets to satisfy an order of forfeiture.  Such a broad entitlement fundamentally alters the property rights granted a defendant elsewhere in our law and transcends the proper boundaries of any procedural rule.

By its terms, 31 U.S.C. § 5317(c)(1)(A) defines the extent of the property subject to forfeiture in structured transaction cases.  To effect forfeiture of any assets other than those "involved in" an offense, the Government must demonstrate that such assets are "traceable thereto." Id.  The Government may only seize a substitute asset "that qualifies for forfeiture under an applicable statute." Fed. R. Crim. P. 32.2(e)(1)(B).  The Court finds that 31 U.S.C. § 5317(c)(1)(B) incorporates only the procedural elements of 21 U.S.C. § 853, and further, that the substitute assets provision codified in § 853(p) is a substantive provision.[25]  Accordingly, in structured transaction cases, the Government is not entitled to forfeiture of substitute assets unless otherwise authorized by a separate applicable statute.

**C.      Excessive Fines Clause of the Eighth Amendment**

Finally, Defendant argues that the Court's Preliminary Order of Forfeiture violates the Eighth Amendment's Excessive Fines Clause. Def. Main Br. at12-14.  Defendant relies on several cases in

---

[25] At oral argument on Defendant's Motion, defense counsel opined as to which subsections of § 853 she believed were procedural, and thus applicable in the context of forfeiture proceedings in structured transactions cases. Tr. 11-12.  Implicit in my holding in Part A of this Opinion, regarding the applicable burden of proof in forfeiture proceedings under 31 U.S.C. § 5317(c), is the conclusion that § 853(d) is procedural.  However, on this Motion, I need not parse through the remaining subsections of 21 U.S.C. § 853 to determine which are substantive and which are procedural.  The narrow question before me is whether § 853(p) is substantive, and applies here, or procedural, and does not.  Having decided that question, I leave consideration of the character of the remaining subsections to other courts.

31

which various Courts of Appeals have found certain forfeitures to be excessive.  However, those cases are distinguishable.  Moreover, application of the Supreme Court's "gross disproportionality" test to the facts of this case demonstrate that the Court's Preliminary Order of Forfeiture is not excessive and does not violate the Eighth Amendment.

In <u>United States v. Bajakajian</u>, 524 U.S. 321 (1998), the Supreme Court established a proportionality test to determine whether a forfeiture violates the Eight Amendment's Excessive Fines Clause.  In that case, the defendant entered a guilty plea to a single charge of failing to report the transportation of more than $10,000 out of the United States. <u>Id.</u> at 325.  After a hearing on the forfeiture issue, the district court ordered the entire amount that the defendant was transporting, $357,144,  forfeited to the United States. <u>Id.</u> at 325-26.  The Supreme Court reversed the forfeiture order, and imposed on lower courts the duty to make a "proportionality determination" as to whether a forfeiture amount is excessive in violation of the Eighth Amendment.  The Court did not require a strict proportionality analysis, noting that (i) deference should be afforded to Congress in determining appropriate punishment, and (ii) a court's "determination regarding the gravity of a particular offense will be inherently imprecise." <u>Id.</u> at 336.  Instead, the Court adopted a standard of "gross disproportionality." <u>Id.</u>

The Court explained that district courts should "compare the amount of the forfeiture to the gravity of the defendant's offense." <u>Id.</u> at 336-37.  If the district court determines that "the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense," the forfeiture is unconstitutional. <u>Id.</u> at 337.  In conducting its review in <u>Bajakajian</u>, the Court looked to the nature of the defendant's offense and the related penalties prescribed by the Sentencing Guidelines. <u>Id.</u> at 338-39. Among the factors that led the Court to reverse the lower court's forfeiture order was the Court's

finding that the defendant's offense was not connected to any other illegality and that the money represented the proceeds of legal activity. Id. at 338.  The Court also noted that the Sentencing Guidelines only prescribed a maximum sentence of six months and a maximum fine of $5,000 for the defendant's offense. Id. at 338-39.  The Court also considered that the defendant's crime only harmed the Government in a minor way, by causing the loss of information to the Government. Id. at 339.  The combination of these factors led the Supreme Court to conclude that the forfeiture was grossly disproportionate and therefore unconstitutional. Id. at 339-40.

In a more recent case, United States v. Ahmad, 213 F.3d 805 (4th Cir. 2000), the Fourth Circuit employed the proportionality analysis in the context of a civil forfeiture based on, among other things, a structuring offense.  The district court had reviewed the government's proposed forfeiture order and concluded that the proposed forfeiture of $186,587.42 was excessive.  The Fourth Circuit conducted a de novo proportionality review, after which it partially reversed the judgement of the lower court. Id. at 807.  After holding that the defendant carried the burden of establishing that the forfeiture was excessive, the Circuit considered the Bajakajian factors. Id. at 816.  The Circuit court noted that the defendant had "repeatedly structured transactions," and distinguished that activity from the offense in Bajakajian. Id. ("[t]he nature of [this] structuring is thus readily distinguishable from the 'single' reporting offense at issue in Bajakajian").  The Circuit also noted the fact that the defendant's structuring was related to violations of other laws, and that the harm caused by the "deposit structuring activities not only caused the government to lose information, but also implicated" the bank "and affected its legal duty to report certain transactions." Id.  In light of those distinctions from the facts in Bajakajian, the Fourth Circuit did not give great weight to the fact that the penalties for the offenses were the same in both cases, and reversed the district court's finding of gross disproportionality. Id. at

33

817.

The facts of this case are more like those in <u>Ahmad</u> than those in <u>Bajakajian</u>.  Here, Defendant's structuring activity constituted a pattern of illegal activity that spanned a twelve-month period.  While the Government only charged Defendant with six counts of acts violating 31 U.S.C. § 5324(a)(3), the evidence presented at trial demonstrated many more structured transactions.  Moreover, the evidence also suggested that Defendant's structuring activity was related to other criminal activity.  Defendant could not, at trial, offer a credible, legitimate source of the funds at issue in this case.  Additionally, in this case the harm exceeds the mere loss of information to the United States, and extends to the bank which, as a result of Defendant's actions, failed to comply with its statutory reporting requirement.

Further weighing against Defendant's argument that the Court's Preliminary Order of Forfeiture is excessive are the statutory penalties for Defendant's offenses.  Congress has recognized the aggravated nature of crimes like Defendant's by providing enhanced penalties for such extensive structuring activity. <u>See</u> 31 U.S.C. § 5324(d)(2).  Indeed, the maximum penalties Defendant faces based on the counts of conviction are ten years imprisonment and $3,000,000 ($500,000 on each count). <u>See</u> U.S.S.G. § 5E1.2(c)(4).[26]  The potential penalties faced by Defendant are considerably greater than the penalties faced by the defendants in <u>Bajakajian</u> and <u>Ahmad</u>.

The forfeiture amount ordered by the Court in this case is an amount that encompasses a twelve-month pattern of illegal conduct committed by Defendant.  That amount, which is less than half

---

[26] The Government's estimation of Defendant's potential sentence relied on the 2001 Sentencing Guidelines "because of ex post facto concerns." <u>See</u> Government's Reply Brief at 17.  Based on the 2001 Guidelines, the Government concludes that Defendant is at a total offense level of twenty-four, prescribing a term of imprisonment of up to seventy-eight months per count under the advisory Guidelines.  The Government's calculation assumes an upward adjustment for obstruction and a criminal history category of III.  If the Court considered the potential sentence excluding any Chapter Three adjustments, Defendant would be at a total offense level of twenty-two under the advisory Guidelines and subject to a term of imprisonment of up to sixty-three months based on a criminal history category of III.

34

of the potential statutory fine, cannot be characterized as grossly disproportional to the gravity of Defendant's offenses.  Defendant has not carried his burden of demonstrating that the forfeiture here is excessive and unconstitutional.

## III.    CONCLUSION

The Court concludes that the preponderance standard applies to forfeitures in structured transaction cases under 31 U.S.C. § 5317(c)(1)(A), and that there is no basis to depart from that standard based on the particular facts of this case.  Furthermore, the Court finds that 31 U.S.C. § 5317(c)(1)(B) incorporates only those procedural provisions of 21 U.S.C. § 853, the statutory mechanism facilitating the Government's seizure of assets subject to forfeiture.  The Court further concludes that § 853(p), which authorizes forfeiture of substitute assets in certain circumstances, is a substantive provision.  Consequently, the Government is not authorized to seize substitute assets in forfeiture proceedings after a conviction for structuring transactions in violation of 31 U.S.C. § 5324, unless forfeiture of such assets is authorized by a separate, applicable statute.  Finally, under the standard established by the Supreme Court in United States v. Bajakajian, the Court finds that the forfeiture amount entered as a judgement against Defendant in the Court's Preliminary Order of Forfeiture is not grossly disproportionate to the gravity of Defendant's offenses, and thus does not violate the Eighth Amendment's Excessive Fines Clause.  Accordingly, Defendant's Motion to Vacate the Court's Preliminary Order of Forfeiture is denied, but  the Government is precluded from seizing substitute assets, pursuant to 21 U.S.C. § 853, to satisfy the forfeiture amount contained therein.

An appropriate Order shall follow.

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: May 12, 2006